<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| INOX WARES PVT. LTD., | : | |
| Plaintiff/Cross-Claim Defendant, | : | Hon. Stanley R. Chesler, U.S.D.J. |
| | : | Civil Action No. 06-4307 (SRC) |
| v. | : | |
| INTERCHANGE BANK, | : | **OPINION** |
| Defendant/Third-Party Plaintiff, | : | |
| v. | : | |
| STANLEY ROBERTS, INC., | : | |
| Third-Party Defendant/ Cross-Claim Plaintiff. | : | |

**<u>CHESLER</u>, <u>U.S.D.J.</u>**

This matter comes before the Court on three motions: 1) the motion for summary judgment, pursuant to FED. R. CIV. P. 56, by Defendant Interchange Bank ("I-Bank"); 2) the motion for summary judgment, pursuant to FED. R. CIV. P. 56, by Plaintiff Inox Wares Pvt. Ltd. ("Inox"); and 3) the motion to dismiss, pursuant to FED. R. CIV. P. 19, by third-party Defendant/cross-claim Plaintiff Stanley Roberts, Inc. ("SRI"). For the reasons that follow, the motion for summary judgment by I-Bank will be granted in part and denied in part; the motion for summary judgment by Inox will be denied; and the motion to dismiss by SRI will be denied.

**<u>BACKGROUND</u>**

This case arises out of a series of transactions between two businesses in the kitchenware trade. Inox is a kitchenware dealer located in India; SRI is a kitchenware dealer located in Lodi,

New Jersey. The essential facts about these transactions are undisputed. Inox maintains a banking relationship with Union Bank of India ("U-Bank"). SRI maintains a banking relationship with I-Bank, which has a branch in Lodi, New Jersey. Neither Inox nor U-Bank has any banking relationship with I-Bank.

Inox and SRI engaged in a series of transactions between 1999 and 2005 in which SRI ordered goods from Inox, which exported them. There were approximately 97 sales transactions in which the following occurred: 1) U-Bank sent a package of sales transaction documents via DHL to I-Bank; 2) I-Bank received the package; 3) I-Bank employees read the shipping label, determined that the package should be forwarded to SRI, and called SRI to send someone to pick the package up; 4) SRI picked up the sealed package. The parties agree that no I-Bank employee ever opened any of these packages.

The majority of these sales transactions were conducted on a documents against acceptance ("D/A") basis: U-Bank sent I-Bank shipping documents, which SRI used to take possession of the goods at the port of entry, later remitting payment to Inox. For 22 transactions, Inox expected that the transaction would be conducted on a documents against payment ("D/P") basis. In a D/P transaction, an intermediary holds the shipping documents and is only authorized to release them after payment has been received from the buyer. A document inside each package sent to I-Bank instructed the recipient as to whether the transaction was D/A or D/P. The instruction document included in the D/P transaction packages directed the bank to collect payment pursuant to No. 522 of the Uniform Rules for Collection of the International Chamber of Commerce. It is undisputed that no I-Bank employee ever viewed an instruction document. I-Bank never processed any of the sales transactions on either a D/A or a D/P basis. Inox alleges

that SRI paid it only a small portion of the amount owed on the D/P transactions, and that there is presently a balance due of $365,944.20.

On September 13, 2006, Inox filed a Complaint with three counts in this Court. The First Count (breach of obligations) alleges that I-Bank was an agent of Inox and had a duty to collect payment from SRI prior to releasing the collection documents, and that it breached that duty. The Count asserts that these duties arose under the "New Jersey Uniform Commercial Code ("UCC"), the previous course of conduct between the parties and the International Chamber of Commerce Uniform Rules for Collection." (Compl. ¶ 18.) The Second Count (negligence) asserts that I-Bank owed Inox a duty of reasonable care, which it breached. The Third Count asserts that I-Bank acted in bad faith and breached the covenant of good faith and fair dealing.

I-Bank answered and filed a third-party complaint against SRI. SRI has cross-claimed against Inox; Inox has counterclaimed against SRI.

On September 12, 2008, the parties filed the three motions that are presently before this Court. I-Bank moved for summary judgment on the Complaint and on its third-party breach of contract claim against SRI. Inox moved for partial summary judgment. SRI moved to dismiss the Complaint for failure to join an indispensable party, pursuant to FED. R. CIV. P. 19.

## ANALYSIS

I.     **Legal Standards**

    A.     Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations .

4

. . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

B.   Rule 19 Motion to Dismiss

In ruling on a motion to dismiss for failure to join an indispensable party, pursuant to FED. R. CIV. P. 19(b), this Court follows the inquiry set forth by the Third Circuit:

> To dismiss a case for failure to join an indispensable party, a two-part inquiry should be applied. The first determination is whether the party is a 'necessary party' under Rule 19(a). A party is a necessary party if, in its absence: (1) complete relief cannot be accorded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a). If the party is deemed a necessary party, we must then consider whether the party in an 'indispensable party' under Rule 19(b). In determining whether a party is indispensable the interests of the plaintiff, the defendant, the absentee party, the courts and the public should be balanced.

Feriozzi Co. v. Ashworks, Inc., 130 Fed. Appx. 535, 538 (3d Cir. 2005).

**II.     The motion for partial summary judgment by Inox**

Inox moves for summary judgment in regard to I-Bank's breach of the duty of care and asks the Court for a judgment in the amount of $365,944.20.  In its supporting papers, Inox never specifies that it moves for judgment on the Second Count of the Complaint, for negligence; nonetheless, since the Second Count is the only count that rests on a breach of a duty of care, this Court construes the motion as a motion for partial summary judgment on the Second Count.

Under New Jersey law, "[i]n a negligence case, plaintiff must show a duty of care, a breach of that duty, and that the breach proximately caused the harm."  Olivo v. Exxon Mobil Corp., 377 N.J. Super. 286, 292 (N.J. Super. Ct. App. Div. 2005).  "A duty is an obligation imposed by law requiring one party 'to conform to a particular standard of conduct toward another.'"  Acuna v. Turkish, 192 N.J. 399, 413 (2007) (quoting Prosser & Keeton on Torts: Lawyer's Edition § 53, at 356 (W. Page Keeton ed., 5th ed.1984)).  "The issue whether a defendant owes a legal duty is generally a question of law for the court to decide."  Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502 (1997).

The motion for partial summary judgment on negligence turns on the issue of whether I-Bank owed a legal duty to Inox; the Court decides this as a matter of law.  As the moving party with the burden of proof of negligence at trial, Inox must demonstrate that it is entitled to judgment as a matter of law.

In its opening brief, Inox never clearly explains the legal basis for imposing a duty on I-Bank.  Inox discusses at length No. 522 of the Uniform Rules for Collection of the International Chamber of Commerce ("URCs"), and makes references to the New Jersey Uniform Commercial Code, but never convincingly identifies the legal basis for imposing such a duty.  Despite

6

presenting a variety of arguments, Inox never establishes that, under these facts, any law imposes a duty on I-Bank to Inox regarding the D/P transactions.

Inox first argues that I-Bank violated the URCs. The URCs are rules promulgated by the International Chamber of Commerce which set forth procedures for documentary collection (collecting on a documents against payment basis). The basic ideas are as follows. URC No. 522 Article 3 defines the parties to such a collection: a "principal" entrusts the handling of a collection to a "remitting bank," while a "collecting bank" is any bank, other than the remitting bank, "involved in processing a collection." Article 2(a) states: "'Collection' means the handling by banks of documents as defined in sub-Article 2(b), in accordance with instructions received . . ." Article 4(a)(i) states: "All documents sent for collection must be accompanied by a collection instruction indicating that the collection is subject to URC 522 and giving complete and precise instructions." In sum, the D/P process, under URC No. 522, involves a principal who entrusts a collection to the remitting bank, which sends a document for collection to the collecting bank, accompanied by the collection instruction. The collecting bank processes the collection in accordance with the instructions.

With this background, No. 522 Article 1 provides the framework for the application of the URCs:

> a) The Uniform Rules for Collections, 1995 Revision, ICC Publication No. 522, shall apply to all collections as defined in Article 2 where such rules are incorporated into the text of the "collection instruction" referred to in Article 4 and are binding on all parties thereto unless otherwise expressly agreed or contrary to the provisions of a national, state or local law and/or regulation which can not be departed from.
>
> b) Banks shall have no obligation to handle either a collection or any collection instruction or subsequent related instructions.

7

    c)    If a bank elects, for any reason, not to handle a collection or any related instructions received by it, it must advise the party from whom it received the collection or the instructions by telecommunication or, if that is not possible, by other expeditious means, without delay.

Article 1 makes clear how parties make use of the URCs. A remitting bank sends a document for collection to a collecting bank, accompanied by the collection instruction. The collection instruction incorporates by reference No. 522 of the URCs. The collecting bank is not obligated to handle the collection but, if it agrees to do so, it has accepted the terms of the collection instruction and is bound by the URCs.

The crucial point here is that the URCs are a set of principles created by a non-governmental organization. URC No. 522 has no binding effect until a collecting bank accepts a document for collection which is accompanied by a collection instruction which incorporates No. 522. The operative legal mechanism is contractual: the URCs become binding when two parties enter into a contract which incorporates them. To succeed on its claim for breach of URC obligations, then, Inox must prove that I-Bank accepted documents for collection or otherwise agreed to the contractual terms stated in the collection instruction. Plaintiff has not done so. As a matter of undisputed fact, I-Bank never expressly agreed to the contractual terms stated in the collection instruction. I-Bank received DHL deliveries alleged to contain such documents and instructions, but never opened any of the packages. There is no evidence that I-Bank accepted the documents for collection in the sense that it agreed to act as a collecting bank. The URCs, incorporated by reference into the collection instruction, thus have no more binding effect on I-Bank than any offer to contract which is received physically but not ever read, no less consented to.

A Sixth Circuit case provides a useful contrast. In Thiagarajar Mills, Ltd. v. Thornton, 242 F.3d 710, 712 (6th Cir. 2001), an Indian buyer sued SCB, a United States bank, which had acted as a collecting bank. There, the Court did look to the URCs to define the duties owed by the collecting bank to the buyer. Id. at 713. In that case, however, there was no question that SCB had processed a D/P transaction and had acted as a collecting bank, and its agreement to follow the URCs was clear. Id. at 712. In the instant case, in contrast, the defendant bank never even opened the document shipments, no less acted as a collecting bank.

Similarly, Proin S.A. v. Lasalle Bank, N.A., 223 F. Supp. 2d 960, 965 (N.D. Ill. 2002) and Gathercrest, Ltd. v. First American Bank & Trust, 649 F. Supp. 106, 114 (M.D. Fla. 1985), both cited by Inox, do not support its position. The Gathercrest court determined "that the parties agreed that the instructions in the transfer and collection letters . . . , including the incorporation of the URC, would govern their responsibilities . . ." Id. The Proin court determined that the parties were bound by an express contract which incorporated the URCs. 223 F. Supp. 2d at 965. Crucially, in the instant case, the parties have not entered into any such agreement.

As to the effect of the New Jersey Uniform Commercial Code, Inox concedes that the UCC "imposes no obligation upon a bank to act as a collecting bank. However, should the bank agree to do so, it must act with ordinary care in accordance with the collection instructions. N.J. Stat. § 12A:4-202." (Pl.'s S.J. Br. 8.) As with the URCs, then, the question of the application of the UCC turns on whether I-Bank agreed to act as a collecting bank. As Inox has failed to demonstrate that I-Bank agreed to act as a collecting bank, there is no basis to conclude that N.J. Stat. § 12A:4-202 imposed a duty of care upon I-Bank.

Inox tries weakly, and without success, to show that the law imposes a duty on I-Bank in

the absence of an agreement to act as a collecting bank. At one point, Inox argues that I-Bank "took possession of and handed [sic] the documents, and in doing so, assumed the role and duties of a presenting bank." As support, Inox first cites URC No. 522 Article 1, which does not say that taking possession of documents constitutes assuming the duties of a presenting bank. Inox also cites N.J. Stat. § 12A:4-105(e), which provides this definition: "'Collecting bank' means a bank handling an item for collection except the payor bank." Inox fails to show a legal basis for finding that the fact that I-Bank "took possession of and handed [sic] the documents" imposes upon it the legal duties of a collecting bank.

In its reply brief, Inox continues this line of argument by citing Zhejiang Tongxiang Import & Export Corp. v. Asia Bank, N.A., 2001 WL 66331 (S.D.N.Y. Jan 25, 2001). Two crucial differences distinguish Zhejiang: it was decided under New York law and, more significantly, the defendant bank had a correspondent banking relationship with the remitting bank and had collected on a number of previous D/P transactions. Id. at *4. In the instant case, I-Bank did not have a correspondent banking relationship with U-Bank and it had never collected for them on previous D/P transactions; rather, there were no transactions with the remitting bank in which I-Bank followed the URC rules for international collection. There is no evidence that I-Bank ever processed any D/P collection.

Inox points to the evidence that, on some occasions, I-Bank participated in the payment process by wiring money from SRI to Inox. (Piemonte 3/13/08 A.M. Dep. at 103:15-104:4, Ruckelshaus Cert. Ex. E.) Yet Piemonte states that I-Bank did not know that these wire transfers had any connection to the documents shipped to I-Bank. (Id.) Absent such knowledge, the mere fact that I-Bank wired payments to Inox does not show that I-Bank even knew what was in the

10

shipments it received, no less agreed to act as a collecting bank.

Similarly, Inox points to the evidence that, on some occasions, SRI employees would bring documents to I-Bank and the branch manager, Aylin Boyaci, would stamp them with a stamp bearing the name and location of I-Bank. (Boyaci 8/4/08 Dep. at 25:20-26:15, Wyner Cert. Ex. C.) Inox argues: "[t]his conduct constitutes the taking up of the documents and imposes the duties of a collecting bank on Interchange Bank." (Pl.'s S.J. Reply Br. 6.) The argument cannot succeed because Boyaci testified that she did not read or understand the documents she stamped. (Boyaci 8/4/08 Dep. at 26:16-27:18, Wyner Cert. Ex. C.) The portion of Boyaci's testimony submitted by Inox establishes only that Boyaci stamped some unknown documents. It does not provide any evidence that Boyaci stamped documents pertaining to the D/P collections, and thus does not support the assertion that the stamping in some way constituted acting as a collecting bank.

Inox also points to the evidence that I-Bank "handled" and "processed" the documents. This is wordplay facilitated by the many meanings of "handle." There is no dispute that I-Bank handled the documents: it accepted the deliveries, contacted SRI, and handed the shipments to SRI. Such handling is distinctly different from agreeing to act as a collecting bank for the documents. There is no evidence that I-Bank handled or processed any documents beyond receiving and delivering the packages containing them.

Inox has failed to persuade that I-Bank had a legal duty to Inox. This constitutes a complete failure of proof of an essential element of Plaintiff's negligence case. Plantiff's motion for summary judgment on the Second Count will be denied.

**III.     The motion for summary judgment by I-Bank**

I-Bank moves for summary judgment on two parts of the case: 1) the Complaint against it filed by Inox; and 2) I-Bank's third-party breach of contract claim against SRI.

    A.     <u>The motion for summary judgment on the Complaint</u>

I-Bank moves for summary judgment on the three claims in the Complaint, contending that there is no basis in law (whether statute, common law, or contract) to find that I-Bank had any obligation or duty to Inox. Lacking this, I-Bank contends, Inox cannot prevail on its claims for breach of obligation, negligence, or breach of the covenant of good faith and fair dealing. The summary judgment burden then shifts to Inox, as the non-movant with the burden of proof at trial.

In opposition, Inox argues, as discussed above, that, when I-Bank received the documents and delivered them to SRI, it assumed the duties of a collecting bank. Most of the opposition repeats the arguments discussed and rejected above. In addition, Inox cites another New Jersey UCC provision, N.J. Stat. § 12A:4-201, and offers a bailment theory.

This New Jersey UCC provision states:

> Unless a contrary intent clearly appears and before the time that a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional.

N.J. Stat. § 12A:4-201. This statutory provision applies only to collecting banks. Because Inox has failed to show that I-Bank was a collecting bank, this statutory provision is inapplicable.

As to the bailment theory, Inox contends that I-bank owed Inox the duties of care of a bailee. Setting aside the question of whether Inox can defeat summary judgment with what

might be considered a new claim, this new theory does not help Inox solve the problem of showing a legal basis for the obligation asserted. Under New Jersey law, bailment is "a relationship that ordinarily rests in contract, express or implied in fact[;] there is also a class of bailments, quasi-contractual in nature, which arise by operation of law." State v. Carr, 118 N.J.L. 233, 234 (N.J. Ct. Err. & App. 1937). Calling this a bailment relationship, then, does not eliminate the need for Inox to establish the legal foundation of the obligation it claims should be imposed on I-Bank. Again, since Inox has failed to persuade that I-Bank had an express or implied obligation to Inox, or that one should be imposed, a bailment theory cannot succeed where contract theories have failed.

In support of the motion, I-Bank argues that the course of conduct between the parties does not evidence any agreement by I-Bank to serve as collecting bank. This argument appears to be directed at the First Count, for breach of obligations, which asserts that I-Bank had a duty to Inox based on "the previous course of conduct between the parties." (Compl. ¶ 18.) I-Bank here appears to be rebutting a line of argument that, despite this language in the Complaint, Inox has not ended up making: Inox has not argued that this Court should look to the conduct of the parties and find in it a contract implied in fact or law. New Jersey law requires "an unqualified acceptance to conclude the manifestation of assent" to a contract. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953)). While New Jersey courts may find an implied-in-fact contract when unqualified acceptance has been manifested in conduct, rather than in words, they generally do so when the offeree has accepted the benefits of the offeror's performance under the contract. Id. at 436-437. Inox has not contended that I-Bank accepted any benefit. Nor has Inox argued that I-Bank has

been unjustly enriched at Inox's expense, and thus that it is entitled to recovery in quasi-contract, or a contract implied-in-law.  See id. at 437-438.

Inox concedes that I-Bank never expressly assented to act as collecting bank, but appears to take the position that it reasonably believed that I-Bank had consented.  Yet Inox does not argue that the reasonable nature of its mistaken belief has any legal significance here, nor does it present any law to support finding that I-Bank was legally obligated by that mistaken belief.

I-Bank has demonstrated that Inox cannot prove its case on any claim in the Complaint. There are no material factual disputes, and this Court may enter judgment as a matter of law. This Court determines that I-Bank did not have any obligations to Inox as a collecting bank, did not owe I-Bank a duty of care in regard to the documents it received, and that no contract, express or implied, existed between I-Bank and Inox such that a breach of the covenant of good faith and fair dealing can be found.

Inox has failed to defeat I-Bank's motion for summary judgment on the Complaint.  I-Bank's motion for summary judgment on the Complaint will be granted in its entirety, and judgment on all three claims in the Complaint will be entered in its favor.

        B.        <u>The motion for summary judgment on I-Bank's third-party claim against SRI</u>

The background to this part of the case is as follows.  In 2006, I-Bank and SRI executed the "Settlement, Release and Indemnification Agreement" (the "2006 Agreement"), effective April 7, 2006.  (Salisbury Aff. Ex. A.)  The 2006 Agreement provides that SRI agreed to indemnify I-Bank for any proceedings against it over its bills of lading.  (2006 Agreement ¶ 2.) On December 4, 2006, I-Bank filed a third-party complaint against SRI for contribution and indemnification.  On June 13, 2008, I-Bank filed an amended third-party complaint against SRI,

14

adding a claim for breach of the 2006 Agreement. While SRI answered the original third-party complaint, it did not file an amended answer to the amended third-party complaint. I-Bank now moves for summary judgment on the third-party breach of contract claim. As third-party Plaintiff, I-Bank bears the burden of proof of breach of contract.

I-Bank contends that "SRI has breached its obligations under the [2006] Agreement without any justification by refusing to accept Interchange's tender" of its defense. (Def.'s S.J. Br. 39.) Yet the December 10, 2007 letter that I-Bank points to as evidence that it tendered its defense shows that the matter is more complicated than I-Bank claims. (Ruckelshaus Cert. Ex. I.) In this letter, I-Bank offered to tender its defense to SRI, but only on two conditions: 1) that SRI establish its financial ability to satisfy any judgment against I-Bank or SRI; and 2) that SRI pay I-Bank's attorneys' fees and costs already incurred in defending against the suit, approximately $42,000. (Id.)

In opposition, SRI states that it agreed in 2006 to indemnify I-Bank, but that it had the right under the 2006 Agreement to choose counsel, and it had chosen Killian & Salisbury, P.C. ("Killian"). The 2006 Agreement states: "In the event that the Bank is made a party to any one or more suits . . . within the scope of SR's indemnification pursuant to this Agreement, SR may retain counsel to represent the Bank, as selected by SR with the consent of the Bank, which consent shall not be unreasonably withheld." (2006 Agreement ¶ 2.) SRI contends that I-Bank never indicated that it refused consent to representation by Killian.

In reply, I-Bank concedes that SRI offered to have Killian defend I-Bank, and that I-Bank did not consent to it. (Def.'s S.J. Reply Br. 12, 15.) It is unclear from I-Bank's reply whether it contends that it reasonably withheld consent.

15

I-Bank has not persuaded this Court that no genuine issues of material fact preclude a grant of summary judgment, and that it is entitled to judgment as a matter of law.  Given that I-Bank has now conceded that SRI offered to have Killian defend it, that it did not consent, and that the 2006 Agreement gave SRI the right to choose counsel, it is not at all clear that I-Bank will be able to prove its claim for breach of contract.  I-Bank's motion for summary judgment on its third-party claim against SRI for breach of contract will be denied.

I-Bank also argues that, because SRI never filed an answer to the breach of contract claim in the amended third-party complaint, the claim is uncontested and summary judgment should be entered in its favor.  In response, SRI contends that this was a minor oversight, and asks that it be given leave to file an amended answer to the third-party complaint now.  SRI's request will be granted.  I-Bank claims no prejudice from SRI's failure to file an amended answer.  SRI has actively litigated this case and I-Bank has not been harmed by SRI's oversight.  SRI will be granted leave to file an amended answer to the third-party complaint.

### IV.   The motion to dismiss by SRI

SRI moves to dismiss this action in its entirety, pursuant to FED. R. CIV. P. 19(b), contending that U-Bank is an indispensable party and joinder is not feasible.  Inox opposes this motion.

This Court must first determine whether U-Bank is a necessary party, pursuant to FED. R. CIV. P. 19(a).  Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 640 (3d Cir. 1998).  It is well-established that joinder of principals and agents is not essential in tort actions, nor is the joinder of joint tortfeasors. 7 Charles A. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1623 (2008).  The parties in this case do not dispute that U-Bank was

16

the agent of Inox.  It appears that U-Bank was merely a collection agent for Inox.  SRI does not persuade that, in U-Bank's absence, complete relief cannot be accorded among those already parties.  Nor does it appear that U-Bank claims an interest relating to the subject of this action. As such, U-Bank is not a person to be joined if feasible, pursuant to FED. R. CIV. P. 19(a).  SRI's motion to dismiss the Complaint for failure to join an indispensable party will be denied.

## CONCLUSION

For the reasons stated above, the motion for summary judgment by I-Bank will be granted in part and denied in part.  As to I-Bank's motion for summary judgment on the Complaint, I-Bank has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  I-Bank's motion for summary judgment on the Complaint is granted, and judgment on the Complaint shall be entered in I-Bank's favor.  As to I-Bank's motion for partial summary judgment on its third-party claim against SRI for breach of contract, I-Bank's motion for partial summary judgment is denied.  SRI is granted leave to file an amended answer to the third-party complaint.  The motion for partial summary judgment by Inox is denied.  SRI's motion to dismiss the Complaint for failure to join an indispensable party is denied.

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated:  October 22, 2008